**SO ORDERED.**

**SIGNED this 07 day of October, 2011.**

**J. Rich Leonard**
**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**

**M.C. PIPE, INC.,** **CASE NO. 11-05256-8-JRL**
**CHAPTER 11**

**DEBTOR.**

---

## ORDER

This matter came before the court on RBC Bank's ("RBC") motion for relief from the automatic stay or in the alternative to convert the case to chapter 7, and on M.C. Pipe, Inc.'s ("debtor") application to employ and compensate officers. A hearing was held on September 13, 2011 and September 30, 2011 in Raleigh, North Carolina.

## JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) which this court may hear and determine.

**FACTS**

The debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 7, 2011, and continues to operate as a debtor-in-possession. The debtor is a North Carolina corporation engaged in the precast concrete business. The debtor is also the surviving entity of a pre-petition merger with the following related entities: Duchaine Properties, LLC, M.C. Equipment, Inc., and M.C. Precast Concrete, Inc. As a result of the merger, the debtor is now obligated on several promissory notes and guaranties in favor of RBC. As security for these obligations, RBC has a lien on the debtor's real property, equipment, inventory, and accounts receivable.

At the hearing, RBC presented testimony from two expert appraisers. RBC's first expert appraiser testified as to the value of the debtor's real property. In his opinion, the value of the debtor's real estate is $6,300,000.00.[1] RBC asked the second appraiser to provide an opinion of value on the debtor's equipment. At the hearing, he testified that there are three ways this equipment could be sold. Thus the proper value for the equipment would depend on how the property would be disposed. He stated that the average fair market value of the equipment is approximately $4,200,000.00. In this situation all of the equipment would be sold together to a willing buyer. Next, he stated that the orderly liquidation value of the property is approximately $868,870.00. Finally, he stated that the equipment's auction value is approximately $1,300,000.00. The appraiser explained that due to the nature of the debtor's business, the fair

---

[1] RBC later argued that the realtor's fee and real estate taxes should be deducted from the expert's opinion of value. In addition the real estate appraiser and personal property appraiser each included the value of the debtor's cranes in their respective appraisals. RBC contends that the true value of the real estate is $5,603,620.22, which is equal to the expert's opinion of value less the amounts for fees, taxes, and cranes.

market value approach would yield the highest value because the equipment is worth more if it is sold all together. Under the fair market value scenario the equipment would be sold as a single unit, unlike the liquidation and auction approach where the equipment would be sold piece-meal.

The debtor entered into evidence several exhibits outlining its proposed plan projections. The debtor's proposals forecast that the debtor is receiving sufficient cash flow from its business operations to fund its plan and will not need a cash infusion or a § 363 sale. The debtor also presented evidence that the debtor has seen an increase in sales from the previous year, has cut expenses, and fixed several accounting problems.

## DISCUSSION

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

RBC contends it is entitled to relief from the automatic stay pursuant to § 362(1) and (2) of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides that a debtor's bankruptcy petition automatically stays "any act to obtain possession of . . . or to exercise control over property of the estate," as well as "any act to collect . . . or recover a claim against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 362(a). However, the court may lift the automatic stay (1) for cause, including a lack of adequate protection; or (2) if the debtor has no equity in the property and the property is not necessary for an effective reorganization. Id. § 362(d)(1)–(2). RBC maintains that the value of the collateral is less than the amount owed under the notes. As a result, the debtor has not adequately protected RBC's interest, the debtor lacks equity in the property at issue, and the property is not necessary for an effective reorganization.

Establishing the value of collateral is essential to a determination of whether a creditor is

entitled to relief pursuant to § 362(d)(1) and (2). Specifically, the value of collateral is critical to (a) whether the debtor has equity in the property and (b) whether that equity is sufficient to adequately protect the creditor. 11 U.S.C. § 362(d)(1)–(2). Sections 362(d)(1) and (2) do not establish a specific method of valuation. Id. In In re Deep River, 2005 WL 1287987, at *7 (Bankr. M.D.N.C. Mar. 14, 2005), the court stated that "[s]ection 506(a) provides some guidance on valuation issues." Pursuant to § 506(a) the value of a secured claim against property of the estate, for purposes of determining the creditor's secured status, "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property[.]" 11 U.S.C. § 506(a). By analogy the value of the property for purposes of § 363 of the Bankruptcy Code should be determined in light of the debtor's "proposed disposition and use" of the property. "In a reorganization proceeding under Chapter 11 of the Bankruptcy Code, the 'proposed disposition and use' of the property is ascertainable from the debtor's Chapter 11 plan." In re Deep River, 2005 WL 1287987, at *7 (citing 11 U.S.C. § 506(c)).

At the hearing, RBC presented evidence on the fair market value, auction value, and orderly liquidation value of the debtor's equipment. RBC argues that the court should use the equipment's auction value for purposes of the relief from stay motion because it is unlikely that the debtor would find a buyer willing to purchase the equipment as a single unit. The debtor contends that the fair market value is correct because under its proposed reorganization plan the debtor will continue its operations. In In re Cohn, 16 B.R. 140, 144 (Bankr. D. Mass. 1981), the court stated,

> fair-market value is the predominant standard of valuation. This is so because generally the property subject to inquiry is either occupied, used in the debtor's business, or otherwise capable of being sold on a "going-concern" basis. On the other hand, forced-sale value is usually only used when the property is vacant,

> inoperative, or must otherwise be disposed of quickly and cheaply. Every attempt is made to give the debtor the full benefit of his equity in the property, so that he may retain it if necessary or dispose of it in a commercially reasonable manner and at a price that will benefit creditors as well as the debtor.

See also In re Savannah Gardens-Oaktree, 146 B.R. 306, 309 (Bankr. S.D. Ga. 1992) ("[I]n the context of reorganization with prospects for success, the fair market value is the appropriate standard of valuation."); In re Helionetics, Inc., 70 B.R. 433, 439 (Bankr. C.D. Cal. 1987) ("[W]here a reorganization is in process and there is every reason to believe that it will be successful, assets of the debtor should be valued on a going concern basis."). In Deep River the debtor's chapter 11 plan proposed to retain real property as a going concern. In re Deep River, 2005 WL 1287987, at *8. Based on the debtor's proposal to retain the property, the court held that "the proper standard of valuation . . . is a value that reflects the fair market value of the Property marketed as a going concern." Id.

In this case, the debtor plans to continue its operations and propose a reorganization plan that will allow it to retain the real estate and equipment. Since filing for bankruptcy, the debtor has increased its sales, cut expenses, and addressed accounting problems. Based on these changes, the debtor believes it will be able to successfully reorganize. Similar to the collateral valuation in Deep River, the value of the equipment in this case is the fair market value because the debtor has shown prospective signs that it will be able to have a successful reorganization. Therefore the court finds that RBC's expert appraiser's fair market value approach is proper. The fair market value of the equipment is $4,200,000.00. RBC presented evidence that the value of the real estate is $5,603,620.22. At the hearing, the debtor did not present any evidence to contradict this value. For purposes of the relief from stay motion, the court finds that the value of the real property is $5,603,620.22. Therefore the total value of the real property and

equipment is $9,803,620.22.

In addition, RBC has a security interest in the debtor's inventory and accounts receivable. RBC contends that the value of the inventory is essentially zero because the majority of the debtor's inventory is built to satisfy purchase orders and thus there is no available inventory to satisfy RBC's security interest. The debtor presented evidence that the total value of the inventory and accounts receivable is $2,485,306.74. The court finds that even if the inventory is built to satisfy purchase orders, the inventory and accounts receivable have some monetary value. RBC has a security interest in the debtor's inventory and once that inventory is sold RBC has a security interest in the accounts receivable. Thus, the total value of RBC's collateral, including the real property and equipment, is approximately $12,288,926.96.

The next issue is whether the debtor lacks equity in the property. Equity, under § 362(d)(2)(A), "refers to the difference between the property value and the total amount of liens against it." In re 6200 Ridge, Inc., 69 B.R. 837, 842 (Bankr. E.D. Pa 1987) (citing, In re Liona Corp., 68 B.R. 761, 766 (Bankr. E.D. Pa 1987)). Here, the debtor does have equity in the property. RBC contends that amount of its secured claim is either $9,252,009.06 or $9,841,631.42.[2] As stated previously the value of RBC's collateral is $12,288,926.96. Thus the total value of RBC's collateral exceeds the value of its claim. The court does not need to address the second requirement under § 362(d)(2) because RBC has not proven the debtor lacks equity in the property. Therefore, RBC is not entitled to relief from the automatic stay pursuant to § 362(d)(2).

---

[2] The debtor may be liable to RBC for the debt of the Barnes Group, an entity no longer in existence. The court does not need to address this issue for purposes of RBC's motion for relief from the automatic stay.

RBC also asserts that the automatic stay should be lifted "for cause" pursuant to § 362(d)(1) because the debtor has not adequately protected RBC's interest. As stated previously, the value of RBC's collateral exceeds the value of its claim. Therefore the court finds that the equity cushion suffices to adequately protect RBC's interest in the collateral, and that RBC is not entitled to relief from the automatic stay pursuant to § 362(d)(1).

Based on the foregoing, the motion for relief from stay or in the alternative conversion to chapter 7 is **DENIED**.

**APPLICATION FOR EMPLOYMENT AND COMPENSATION OF OFFICERS**

The debtor filed an application to employ and compensate officers. Specifically, the debtor requested that it be able to employ Chantale Duchaine as secretary with a yearly salary in the amount of $104,000.00, and Raymond Duchaine as president and chief executive officer with a yearly salary of $156,000.00. Both Mr. and Mrs. Duchaine would also continue to receive a benefits package from the debtor.

At the hearing, Mrs. Duchaine testified that she manages the office and office staff, and Mr. Duchaine supervises the manufacturing process and sales. The debtor argues that the compensation requested is similar to the compensation the Duchaines were receiving pre-petition. Based on national averages in similar industries, the debtor argues the compensations would be objectively reasonable because the Duchaines' combined compensation does not exceed $250,000.00. The debtor maintains that the compensation is also subjectively reasonable because the officers would not be receiving unnecessary raises. Both RBC and the bankruptcy administer objected to the Duchaines' compensation has being unreasonably high.

Based on the national standards for similar industries, the court finds that the

compensation requested by Mr. and Mrs. Duchaine is too high. While in chapter 11, Mr. and Mrs. Duchaine will be required to take a 20% reduction in their base pay, but each will be permitted to retain their benefits package. The reduction puts the Duchaines' combined income in line with the national average.

**END OF DOCUMENT**